# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GREGORY D. VALENTINE, | ) |
| Petitioner, | ) ) ) |
| v. | ) NO. 3:17-cv-01029 ) |
| KEVIN GENOVESE, Warden, | ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION

Gregory Valentine filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (Doc. No. 1), Respondent filed a response (Doc. No. 7), and Petitioner filed a reply (Doc. No. 13). Petitioner then filed a motion to amend (Doc. No. 18), to which Respondent filed a response (Doc. No. 27), and Petitioner filed a reply (Doc. No. 28). Petitioner also filed a motion for discovery. (Doc. No. 23.) As explained below, the Petition will be denied, the motion to amend will be denied as moot, and the motion for discovery will be denied as well. This action will be dismissed.

**I.  Procedural Background**

In December 2009, a Sumner County grand jury indicted Petitioner and five co-defendants for "twenty counts of identity theft, six counts of criminal simulation, one count of forgery, one count of theft of property valued at $10,000 or more but less than $60,000, and one count of money laundering." State v. Valentine, No. M2012-02487-CCA-R3-CD, 2013 WL 4068607, at *1 (Tenn. Crim. App. Aug. 13, 2013) ("Valentine II"*).* The grand jury also indicted just Petitioner for "one count of filing a false police report." Id.

As part of a plea agreement negotiated by counsel, Petitioner entered "best interest" pleas to these counts. (Doc. No. 6-1 at 3–6, 8–33 (judgments); Doc. No. 6-3 at 13 (plea agreement).) The parties agreed that Petitioner would receive "an effective sentence of twelve years and eight months, with service of thirty-two months at seventy-five percent in confinement at the county jail followed by service of ten years at thirty percent on state probation." Valentine II, 2013 WL 4068607, at *1. On October 14, 2010, Sumner County Judge Dee David Gay held a hearing and accepted the plea agreement. (Doc. No. 6-3 at 54, 60, 64, 69 (transcript).)

In a *pro se* motion dated October 15, 2010—one day after the plea hearing—Petitioner requested to withdraw his pleas. (Doc. No. 6-1 at 34–36.) He filed two more similar motions dated October 17 (id. at 39–40) and October 18 (id. at 37–38). Judge Gay denied the motions without a hearing. (Id. at 41.) Petitioner appealed. (Id. at 42–44.) The Tennessee Court of Criminal Appeals ("TCCA") reversed the trial court's judgment and remanded for an evidentiary hearing. State v. Valentine, No. M2010–02356–CCA–R3–CD, 2012 WL 3263117, at *1 (Tenn. Crim. App. Aug. 10, 2012) ("Valentine I"). Judge Gay held an evidentiary hearing, at which Petitioner was represented by counsel, and again denied the motions at the conclusion of the hearing. (Doc. No. 6-7 at 116–23 (transcript).) Petitioner appealed, and the TCCA affirmed the trial court's judgment. Valentine II, 2013 WL 4068607, at *1, 14. The Tennessee Supreme Court denied discretionary review on December 12, 2013. (Doc. No. 6-14.)

In April 2014, Petitioner filed a *pro se* petition for post-conviction relief. (Doc. No. 6-15 at 3–16.) He asserted three claims: "(1) his guilty plea was unlawfully induced or involuntary, (2) his conviction was based on the use of a coerced confession, and (3) he received ineffective assistance of counsel." Valentine v. State, No. M2014-00977-CCA-R3-PC, 2015 WL 274181, at *5 (Tenn. Crim. App. Jan. 21, 2015) ("Valentine III"). Judge Gay summarily dismissed the

2

petition. (Doc. No. 6-15 at 71–73.) In doing so, he concluded that Petitioner's first and third claims were previously raised and rejected, and that his second claim was waived. (Id.) The TCCA agreed with the disposition of the first and second claims, but not the third. Valentine III, 2015 WL 274181, at *7. That is, the TCCA concluded that Petitioner's claim for ineffective assistance of counsel should not have been dismissed without an evidentiary hearing. Id. The TCCA, therefore, reversed the judgment on this claim and "remanded for appointment of counsel and the opportunity to amend the petition for post-conviction relief pursuant to Tennessee Code Annotated section 40-30-107." Id. On remand, Judge Gay appointed counsel (Doc. No. 6-19 at 97), allowed an opportunity to amend (id. at 101), and set an evidentiary hearing (id.).

On May 8, 2015—before the evidentiary hearing and acting through counsel—Petitioner filed a motion requesting that Judge Gay recuse himself from any further proceedings involving Petitioner. (Doc. No. 6-19 at 102–03.) On June 26, Judge Gay held a hearing and denied the motion. (Doc. No. 6-22 at 11–15) (transcript).)

Meanwhile, Petitioner did not amend the *pro se* post-conviction petition. (Doc. No. 6-23 at 52–53 (transcript of March 11, 2016 evidentiary hearing).) Accordingly, Judge Gay held an evidentiary hearing limited to the ineffective assistance of counsel claim remaining from Petitioner's original petition. (Id.) He denied the petition in a written order. (Doc. No. 6-20 at 3–8.) On appeal, Petitioner argued that the court erred by denying both his motion for recusal and his post-conviction petition. (Doc. No. 6-27 at 5 (Petitioner's appellate brief).) The TCCA affirmed. Valentine v. State, No. M2016-00854-CCA-R3-PC, 2017 WL 716015, at *10 (Tenn. Crim. App. Feb. 23, 2017) ("Valentine IV"). The Tennessee Supreme Court denied Petitioner's application for permission to appeal on May 18, 2017. (Doc. No. 6-30.) Petitioner then filed a timely *pro se* habeas corpus Petition in this Court. (Doc. No. 1.)

## II. Factual Background

At the plea hearing, the Assistant District Attorney ("ADA") provided a factual basis for Petitioner's "best interest" plea. The ADA stated that Maurice Reed, one of Petitioner's co-defendants who was "eventually dismissed in favor of Federal prosecution," opened an account with Bank of America under the name "Greg Shapiro" around 9:30 a.m. on September 30, 2009. (Doc. No. 6-3 at 55–56.) Soon thereafter, Reed went to a Madison branch, and the bank "made a transfer from the real Greg Shapiro's account to the bogus Greg Shapiro account [Reed] had just created." (Id. at 56–57.) According to the ADA, the bank "transferred $16,000" and Reed "withdrew $7,500." (Id. at 57.) Reed also "withdrew another $7,500" from a Hendersonville branch "later that day." (Id.)

Yolanda Carter, another one of Petitioner's co-defendants later "taken for Federal prosecution," entered the Hendersonville branch around 2:00 p.m. that afternoon. (Id. at 56–57.) Carter "attempted to start an account under the name of Gail Shapiro." (Id. at 57.) Bank of America notified the Hendersonville branch of fraudulent activity, and someone at the branch called the Hendersonville Police Department ("HPD"). (Id. at 55, 57.) The caller reported a female "member of a fraud ring who had perpetrated identity theft" in the branch, and eventually said that the suspect "was leaving the bank and fleeing the premises." (Id. at 55.)

HPD officers driving by the branch "saw the woman fleeing the bank," and "heard the call almost immediately." (Id. at 55–56.) The officers saw her get into a "rental van out of California" that contained a total of six people, including Carter, Reed, and Petitioner. (Id. at 56–58.) The police questioned the suspect, and she said that her name was "Gail Shapiro, which [was] the name on the identification" she used at the bank. (Id.) The five other people in the van stated that they "didn't know her" and "had just picked her up." (Id.) The HPD's subsequent investigation,

4

however, established these six individuals "had been together for days and had been traveling across the country." (Id.) In the van, police later found "numerous false identifications," as well as scraps of paper with "bank account holder's names, social security numbers, account number[s], date[s] of birth, sometimes mother's maiden name[s]." (Id. at 57.)

The ADA stated that, "according to the State's information," Petitioner was "the leader of this enterprise, at least the highest ranking person of the enterprise that was in the van." (Id. at 58.) The ADA connected these facts to Petitioner's charges as follows:

> Criminal Simulation for the fake IDs. Identity Theft for the information on the many pieces of paper regarding the individual account holders. False Report for saying that the defendant who was later determined to be Yolanda Carter was Gail Shapiro. Theft over $10,000 relating to the $15,000 that was removed from Greg Shapiro's bank account. Forgery for Maurice Reed signing the name of Gregory Shapiro on the bank documentation to open the false bank account that morning in Hendersonville, and identity theft for his use of Greg Shapiro's name at that time, and one Identity Theft count for Yolanda Carter using Gail Shapiro's name. . . .
>
> There is a money laundering charge that is Money Laundering by Promotion of a Criminal Enterprise by Reinvesting Criminal Proceeds . . . under [Tennessee Code Annotated section 39-14-]903(b) of the money laundering [statute]. That is for the deposit of $100 that went in to start the bogus account on that morning in the name of Greg Shapiro.

(Id. at 57–58.)

### III. Asserted Claims

Petitioner asserts two claims. The first claim is "[w]hether the Court of Criminal Appeal[s] erred in affirming the trial court[']s denial of [Petitioner's] motion to recuse." (Doc. No. 1 at 5.) The second claim is "[w]hether the Court of Criminal Appeals erred in affirming the trial court[']s denial of [Petitioner's] motion." (Id. at 7.)

### IV. Standard of Review

The authority for federal courts to grant habeas relief to state prisoners is provided by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Harrington v. Richter, 562

5

U.S. 86, 97 (2011). Under AEDPA, a habeas claim "adjudicated on the merits" in state court cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" Hill v. Curtin, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting Lockyer v. Andrade, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Harris v. Haeberlin, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." Id. (quoting Wiggins v. Smith, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002). State-court factual

determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." Pouncy v. Palmer, 846 F.3d 144, 158 (6th Cir. 2017) (quoting Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." Rice v. White, 660 F.3d 242, 250 (6th Cir. 2011) (citing Byrd v. Workman, 645 F.3d 1159, 1172 (10th Cir. 2011)).

**V.     Analysis**

As explained below, Petitioner exhausted his two claims in state court, and they are both without merit.

    **A.     Claim 1—Motion to Recuse**

Petitioner first asserts that the trial court erred in denying the motion to recuse he filed in May 2015. (Doc. No. 1 at 5.) In the motion, Petitioner argued that there was a reasonable basis to question Judge Gay's impartiality because, in October 2011, Petitioner filed a disciplinary complaint against Judge Gay with the Tennessee Court of the Judiciary. (Id.) The complaint was summarily dismissed, and Judge Gay was notified of the complaint and dismissal shortly thereafter. (Doc. No. 6-9 at 62.)

At the hearing on the motion before Judge Gay, Petitioner specified that the motion was based on Tennessee Supreme Court Rule 10, Rule of Judicial Conduct 2.11(a). (Doc. No. 6-22 at 6.) Likewise, on appeal, Petitioner argued this claim under only state law. (Doc. No. 6-27 at 14–15.) The TCCA, in affirming the trial court's judgment, analyzed this claim under only state law. Valentine IV, 2017 WL 716015, at *6–7. Neither Petitioner, nor Judge Gay, nor the TCCA referenced federal law throughout the proceedings on Petitioner's motion to recuse.

7

"[I]t is 'not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Thomas v. Stephenson, 898 F.3d 693, 701 (6th Cir. 2018) (quoting Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)). Thus, to the extent Petitioner is asserting that the state courts erred in applying state law, Petitioner's claim is not cognizable in this federal habeas proceeding. See White v. Tennessee, No. 2:14-cv-116, 2017 WL 4364073, at *6-7 (E.D. Tenn. Sept. 29, 2017) (dismissing as non-cognizable a federal habeas claim that state trial judge failed to recuse under Tennessee Code of Judicial Conduct).

In his reply, Petitioner essentially acknowledges this point of law to mean that he cannot obtain relief under 28 U.S.C. § 2254(d)(1)—the section of AEDPA authorizing relief where the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." (Doc. No. 13 at 6.) Instead, Petitioner argues, he is asserting this claim under 28 U.S.C. § 2254(d)(2), which may provide relief where a state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (Doc. No. 13 at 6–7.)

Petitioner's theory of relief is fundamentally flawed. A federal court can grant a state prisoner's request for habeas relief "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). In other words, to be reviewable in federal court, a habeas claim must be premised on some underlying violation of federal law. See Thomas, 898 F.3d at 700 (quoting Estelle, 502 U.S. at 67) ("[T]he Supreme Court has 'stated many times that federal habeas corpus relief does not lie for errors of state law.'"). For this reason, "an error in the application of state law will be reviewed 'only if it were so fundamentally unfair as to violate the petitioner's due process rights.'" Coleman v. Curtin, 425 F. App'x 483, 485 (6th Cir. 2011) (quoting Coleman v. Mitchell, 244 F.3d 533, 542 (6th Cir. 2001)).

Here, the trial court's denial of Petitioner's motion to recuse does not meet this standard. Judge Gay held a hearing, and found that "there [was] nothing in the record at [that] particular time that would cause [him] to have any apprehension about [his] ability to preside fairly and impartially in [that] particular matter proceeding on a post-conviction relief [petition]." (Doc. No. 6-22 at 13–14.) He also found that "[t]here [was] nothing on the record that show[ed] overbearingness or harshness or bias or unfairness[.]" (Id. at 14.) The TCCA considered Petitioner's arguments, thoroughly reviewed the record, and determined that the trial court did not abuse its discretion in denying the motion. Valentine IV, 2017 WL 716015, at *1–7; see also Getsy v. Mitchell, 495 F.3d 295, 311 (6th Cir. 2007) (quoting Bracy v. Gramley, 520 U.S. 899, 909 (1997)) ("[C]ourts ordinarily 'presume that public officials have properly discharged their duties.'"). Accordingly, Petitioner's claim that the trial court erred in denying the motion to recuse is not eligible for habeas review.

### B. Claim 2—Motions to Withdraw Pleas

The basis of Petitioner's second claim is not immediately clear. (See Doc. No. 1 at 7 (listing the ground for relief as the trial court's error in "denial of [his] motion," without specifying the motion to which he is referring); but see id. (listing the supporting facts as "see attached - ineffective asst. of counsel page 3, 4, 5 of appellant brief").) Based on the procedural history of this claim in the Petition and Petitioner's reply, however, the Court liberally construes Claim 2 as a challenge to the trial court's denial of Petitioner's motions to withdraw his pleas. (See id. (listing the "[t]ype of motion or petition" as "pro-se motion to set aside"); Doc. No. 13 at 4 (stating that Petitioner intended Claim 2 to challenge the trial court's denial of "his motions to set aside or withdraw his guilty pleas").)

To recap the background of this claim, Petitioner filed three *pro se* motions to withdraw his pleas within one week of entering them. Petitioner sought to withdraw his pleas for three reasons: (1) his attorney coerced him to plead by using his "baby['s] mother as a bargaining tool"; (2) "Johnson," "Ross," and "Young"[1] were supposed to have been released when he entered his pleas, but they were not; and (3) "somewhat vague allegations of a misunderstanding between [Petitioner] and the State concerning the negotiated plea agreement." Valentine I, 2012 WL 3263117, at *1. The trial court summarily dismissed Petitioner's motions without a hearing, and the TCCA reversed and remanded for an evidentiary hearing. The trial court then held an evidentiary hearing and denied the motions.

On appeal, Petitioner argued that his pleas were not knowing and voluntary because his counsel coerced him into entering his "best interest" pleas. Valentine II, 2013 WL 4068607, at *11. The TCCA analyzed Petitioner's claim under both state and federal law, and this Court will consider each portion of the state court's ruling in turn.

    **1.**    **State Law**

After thoroughly summarizing the testimony from Petitioner's October 2010 plea hearing, the September 2012 evidentiary hearing on the motions to withdraw, and the trial court's evaluation of the credibility of the witnesses at the evidentiary hearing, the TCCA explained that Tennessee Rule of Criminal Procedure 32(f) governed Petitioner's motions. Valentine II, 2013 WL 4068607, at *1–12. Specifically, the TCCA noted that, "[b]ecause [Petitioner] filed his motion to set aside his pleas after his sentence was imposed but before the judgments became final," Rule 32(f) allowed him to withdraw his pleas "to correct manifest injustice." Id. The TCCA went on to conclude that Petitioner "failed to establish that manifest injustice warrants the setting aside of his

---

[1] These names refer to Takisha Johnson, Kevin Ross, and Howard Young—the co-defendants in Petitioner's state criminal case who were not dismissed in favor of Federal prosecution. (Doc. No. 6-6 at 3.)

pleas." Id. at *134. Here, to the extent that Petitioner is attempting to challenge the state court's determination of this state-law issue, this claim is not a valid ground for federal habeas relief. See Franks v. Lindamood, 401 F. App'x 1, 7 (6th Cir. 2010) (citing Estelle, 502 U.S. at 67–68) (finding the TCCA's application of the "manifest injustice" standard of Rule 32(f) to be outside the scope of federal habeas review); see also Dickey v. Warden, Lebanon Corr. Inst., No. 1:08-cv-819, 2010 WL 92510, at *8 (S.D. Ohio Jan. 6, 2010) (collecting cases) ("[T]here is no federal constitutional right, or absolute right under state law, to withdraw a guilty plea.").

### 2. Federal Law

As the TCCA noted, however, one of the circumstances that supports a showing of "manifest injustice" under state law is that "the plea was not knowingly, voluntarily, and understandingly entered." Valentine II, 2013 WL 4068607, at *12 (citing State v. Crowe, 168 S.W.3d 731, 341 (Tenn. 2005)). Indeed, Petitioner specifically argued that his plea was unknowing and involuntary due to his counsel's coercion. Id. at *11. In the process of analyzing Petitioner's argument on this point, the TCCA accurately identified the federal standard for determining whether a plea is knowing and voluntary:

> When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

11

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242–43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include the following:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

Valentine II, 2013 WL 4068607, at *13.

The TCCA then rejected Petitioner's claim:

[Petitioner's] plea colloquy shows that he entered his best interest pleas voluntarily, that he was pleased with trial counsel's representation, and that he understood the terms of the plea agreement and the rights he was waiving by entering his pleas. We conclude the transcript of the plea submission hearing is devoid of evidence that trial counsel coerced [Petitioner] into entering his best interest pleas. . . . In applying the aforementioned Blankenship factors, we note that by all accounts [Petitioner] was a very intelligent individual. The State concluded that [Petitioner] was the leader of an elaborate identity theft ring that had traveled across the country stealing money from individuals' bank accounts. Trial counsel stated that [Petitioner] was meticulous about the details of his plea agreement, even to the point of requiring that a specific date for his release from jail be included in his plea agreement and judgments of conviction. Moreover, the trial court observed that [Petitioner] was "very assertive" regarding the terms of his plea agreement and knew what he wanted when it came to his case. Regarding [Petitioner's] familiarity with criminal proceedings, the record shows that [Petitioner] had an extensive criminal history, which included convictions as a juvenile for one count of murder in the first degree, three counts of attempted murder, and one count of accessory for murder, at least one felony conviction as a[n] adult, and many misdemeanor convictions. [Petitioner's] extensive criminal history as well as his assertiveness regarding the terms of his plea agreement in the instant case indicates that he was extremely familiar with criminal proceedings at the time he entered his pleas. Regarding whether [Petitioner] was represented by competent trial counsel and had the opportunity to confer with counsel regarding his options, the record shows that trial counsel properly advised him of his options at all stages of the proceedings and was able to procure an extremely favorable plea agreement for [Petitioner].

> Although [Petitioner] previously had been offered thirty years in confinement, trial counsel was able to convince the State to agree to thirty-two months at seventy-five percent in the county jail followed by ten years on state probation. The proof at the evidentiary hearing shows that trial counsel met with [Petitioner] several times, provided him with the relevant offer prior to the date of the plea submission hearing, and thoroughly discussed the offer with him. Regarding the extent of advice from counsel and the court regarding his charges, the record shows that both trial counsel and the court reviewed [Petitioner's] charges with him extensively and informed him of the sentences he would face if he proceeded to trial. Finally, regarding the reasons for [Petitioner's] decision to enter his pleas, the record indicates that [Petitioner] entered his pleas to avoid a greater penalty than what he might have received at trial and to have his co-defendants, including Johnson, the mother of his child, released for time served.

Id.

The TCCA's rejection of this this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and it was not based on an unreasonable determination of the facts before it. As reflected above, the TCCA reviewed transcripts of Petitioner's plea hearing and the evidentiary hearing on Petitioner's motions to withdraw. During the plea colloquy, Judge Gay asked Petitioner if he was entering his pleas "of his own free will," and Petitioner responded, "Yes, sir." (Doc. No. 6-3 at 65.) Judge Gay also asked Petitioner if he signed and understood the plea agreement, and Petitioner responded, "Yes, sir." (Id. at 64–65.) This plea hearing testimony "carries great weight." Marks v. Davis, 504 F. App'x 383, 386 (6th Cir. 2012) (citing Blackledge v. Allison, 431 U.S. 63, 73–74 (1977)). Additionally, through the plea agreement itself, Petitioner affirmed that he sought to enter "best interest" pleas to the offenses of conviction in exchange for the agreed-upon sentence, which was set forth in detail. (Doc. No. 6-3 at 13.)

At the evidentiary hearing on Petitioner's motions to withdraw, the trial court heard testimony from Petitioner, Petitioner's counsel, and Takisha Johnson, Petitioner's state co-defendant and the mother of Petitioner's child. The TCCA extensively summarized this testimony

13

in its opinion. Valentine II, 2013 WL 4068607, at *5–9. While not entirely inconsistent, there were some differences between the testimony of Petitioner and Petitioner's counsel. Judge Gay generally found that Petitioner's testimony was not "believable, credible or truthful" (Doc. No. 6-7 at 118), while crediting counsel's testimony (id. at 119).

One important discrepancy in testimony was about when Petitioner received the plea offer. Petitioner testified that he was essentially blindsided with the offer the day of the hearing. (Id. at 20.) By contrast, counsel testified that he presented the offer to Petitioner at the jail before the day of the hearing, and Petitioner "gave [him] the impression . . . prior to his plea date that he would accept that offer." (Id. at 86–87.) Indeed, counsel testified that he "thought the plea agreement was a done deal when we came to court that day." (Id. at 103.) According to counsel, Petitioner was "very concerned about [his co-defendants] being released as part of any plea agreement," especially Johnson. (Id. at 87.) It was not until the day of the hearing, counsel testified, that Petitioner expressed unwillingness to change his plea before ultimately accepting the agreement. (Id. at 86–87.) Judge Gay credited counsel's testimony on this point. (Id. at 119 ("[Counsel] met with [the ADA] and he met with the defendant many times[.] . . . The testimony is clear that the defendant gave an initial impression that he would take the offer after it was made.").)

Petitioner also testified that counsel told him Judge Gay was "a mean judge [and that you will have] an all white jury, [and that] you're going to get the maximum and all that if you don't take this." (Id. at 21.) Counsel categorically denied making these statements. (Id. at 96.) Instead, he testified that he told Petitioner Judge Gay was a "tough sentencing judge," and that it was his opinion that Petitioner would receive a sentence for "a lot more than what the current offer was" if Petitioner was convicted. (Id. at 96.) Judge Gay found Petitioner's side of this testimony to be "unbelievable," noting that it was "discredited by" counsel. (Id. at 118.)

14

In sum, Judge Gay observed the witnesses, considered the available information, and made the credibility determinations necessary to resolve conflicting testimony. The TCCA adopted these credibility determinations in affirming the denial of Petitioner's motions to withdraw. See, e.g., Valentine II, 2013 WL 4068607, at *13 ("The proof at the evidentiary hearing shows that trial counsel met with [Petitioner] several times, provided him with the relevant offer prior to the date of the plea submission hearing, and thoroughly discussed the offer with him."). Indeed, the TCCA found that "the record fully supports the denial" of the motions. Id. at *14.

A federal habeas court "may not lightly ignore" a state court's "credibility findings; they are entitled to 'great deference' and 'must be sustained unless [they are] clearly erroneous,' particularly in the context of AEDPA-limited habeas review." Howell v. Hodge, 710 F.3d 381, 386 (6th Cir. 2013) (quoting Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam)). Moreover, "[a] state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence." Wright v. Lafler, 247 F. App'x 701, 705 (6th Cir. 2007) (citing Garcia v. Johnson, 991 F.2d 324, 326 (6th Cir. 1993)). Here, Petitioner does not approach the high bar of demonstrating that the TCCA's credibility determinations were "clearly erroneous." Petitioner also has not established that the TCCA's determination on the knowing and voluntary nature of his pleas was unreasonable. For all of these reasons, Petitioner is not entitled to relief on his claim that the trial court erred in denying the *pro se* motions to set aside his pleas.

## VI. Motion to Amend

In May 2019, Petitioner filed a motion to amend the Petition, seeking to add a claim that the Tennessee Department of Correction ("TDOC") was holding him in custody after his sentence expired. (Doc. No. 18 at 2–3.) According to Petitioner, he received a Tennessee Offender

15

Management Information System Summary on May 3, 2019, stating that his sentence expired on October 29, 2018. (Id. at 3.) Petitioner requested immediate release from TDOC custody. (Id.)

Respondent opposes the motion and argues that amending the Petition to add the proposed claim would be futile for two reasons—Petitioner did not properly exhaust his state court remedies, and the claim itself is meritless because Petitioner's sentence was not actually expired when he filed the motion.[2] (Doc. No. 27 at 4, 7.) More importantly than Petitioner's proposed sentence-expiration claim appears to be futile, it is also now moot.

Petitioner filed a notice with the Court reflecting that he was released from prison on August 21, 2019, and he updated his address to a residential address. (Doc. No. 29.) Article III of the Constitution requires "the existence of a live case or controversy" for "the exercise of judicial power." Demis v. Sniezek, 558 F.3d 508, 512 (6th Cir. 2009) (citing Lemis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)). Accordingly, "[i]f events occur during the pendency of a litigation which render the court unable to grant the requested relief, the case becomes moot and . . . falls outside our jurisdiction." Howard v. Tennessee, 760 F. App'x 837, 840–41 (6th Cir. 2018) (quoting Demis, 558 F.3d at 512).

After "a prisoner's sentence has expired, . . . 'some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." Demis, 558 F.3d at 512 (quoting Spencer v. Kemna, 523

---

[2] As Respondent explains, Petitioner received a "time sheet" that reflected "erroneously awarded . . . jail credit from October 14, 2010, to September 29, 2011." (Doc. No. 27 at 8–9.) It appears that the confusion on this point stemmed from the structure of Petitioner's sentence—it included one group of concurrent sentences to be served consecutively to another group of concurrent sentences. Because Petitioner was serving time for his first group of sentences from October 14, 2010 to September 29, 2011, Petitioner could not receive jail credit for this time on his second, consecutive group of sentences. (Id. at 8.) Awarding jail credit in this manner is consistent with Judge Gay's "Order Clarifying Jail Credit" attached to Petitioner's reply in support of his motion to amend. (Doc. No. 28 at 6.) There, Judge Gay clarified that Petitioner's time served in local jail from September 30, 2009 to September 29, 2011, should be applied only to Petitioner's first group of sentences, which are now terminated. (Id.) After Petitioner received the erroneous time sheet, Respondent "properly recalculated [Petitioner's] sentence to remove this credit." (Doc. No. 27 at 9.)

16

U.S. 1, 7 (1998)). The Court "may presume such collateral consequences when a released petitioner contests his underlying criminal conviction," Witzke v. Brewer, 849 F.3d 338, 341 (6th Cir. 2017) (citing Spencer, 523 U.S. at 12–14), but not where, as here, a released petitioner is attempting to contest "the length of time he was serving." See Chouinard v. Guy, No. 3:17-cv-00003, 2019 WL 1368620, at *3 (E.D. Tenn. Mar. 26, 2019) ("Petitioner is not challenging his underlying convictions. Instead, he is contesting the revocation of his alternate sentence and the length of time he was serving following revocation.").

Here, through the motion to amend, Petitioner asserts that the TDOC held him in custody beyond the expiration of his sentence. But Petitioner has since been released from TDOC custody, and he has not attempted to demonstrate any collateral consequence from the alleged miscalculation of his sentence expiration date. Because Petitioner has received the relief he requested for this claim, the claim is now moot. See Lightfoot v. Scutt, No. 11–14967, 2012 WL 2524503, at *2 (E.D. Mich. June 29, 2012) (finding as moot a habeas petitioner's claims concerning "an alleged miscalculation of good time credits that purportedly resulted in imprisonment beyond his maximum sentence" where he was "no longer incarcerated"). The Court, accordingly, will deny Petitioner's motion to amend the Petition to include this claim as moot.

**VII. Motion for Discovery**

Finally, Petitioner filed a motion for discovery under Rule 6 of the Rules Governing Section 2254 Cases ("Habeas Rules"). (Doc. No. 23.) This Rule "embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004) (quoting Bracy v. Gramley, 520 U.S. 899, 908–09 (1997)). Additionally, Rule 6(b) requires that a

request for discovery "include any proposed interrogatories and requests for admission, and must specify any requested documents."

Here, Petitioner's motion is entirely devoid of specific factual allegations to support his request for discovery, and it does not comply with Rule 6(b). Instead, Petitioner makes a general request for "deposition[s], productions of documents or other physical material, physical and mental examination, requests of admission, written interrogatories, and permission to enter upon land or other property for inspection or other purposes." (Doc. No. 23 at 1.) At most, the motion amounts to an improperly supported "fishing expedition[] based on . . . conclusory allegations." Williams, 380 F.3d at 974 (quoting Rector v. Johnson, 120 F.3d 551, 562 (5th Cir. 1997)). Petitioner, therefore, has not carried his burden of demonstrating good cause to permit discovery under Habeas Rule 6.

## VIII. Conclusion

For these reasons, the Petition (Doc. No. 1) will be denied, Petitioner's motion to amend (Doc. No. 18) will be denied as moot, and Petitioner's motion for discovery (Doc. No. 23) will be denied as well. Accordingly, this action will be dismissed.

Because this constitutes a "final order adverse to" Petitioner, the Court must "issue or deny a certificate of appealability." Habeas Rule 11(a). A certificate of appealability may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Here, the Court concludes that Petitioner has not satisfied this standard, and will therefore deny a certificate of appealability.

An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE